TRULINCS 02555506 - CAMMARATA, JOSEPH - Unit: FAI-E-A

---

FROM: 02555506
TO:
SUBJECT: Certification Houston v. Lack
DATE: 02/12/2025 08:10:55 AM

. CERTIFICATION OF MAILING FROM PRISON MAILBOX

I, Joesph Cammarata, hereby certify under penalty of perjury that I have placed the attached, Amended Compliant, in the prison mailbox system on Wednesday, February 12th, 2025 from Fairton FCI. Pursuant to the Supreme Court guidance under Houston v. Lack (1988), also known as the "prison mailbox rule", the Amended Complaint complies with the Court's 30 days from its order, filing requirement and is deemed to be filed with the Court on February 12th, 2025.

Joseph Cammarata

February 12th, 2025

Witnessed by:

J. Swope
Corrections Officer

RECEIVED

FEB 19 2025

AT 8:30 ____________M
CLERK, U.S. DISTRICT COURT - DNJ

---

FROM: 02555506
TO:
SUBJECT: Part 1 - Amended Complaint
DATE: 02/12/2025 05:09:11 PM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Joseph Cammarata,
Plaintiff,
v.
John V. Donnelly III, et al.
Defendants.

Civil Action No. 24-1000 (ZNQ) (JBD)

AMENDED COMPLIANT

I. INTRODUCTION

This amended complaint addresses the deficiencies noted by the Court in its opinion dated January 14, 2025. Plaintiff seeks relief for violations of his constitutional rights under the Fifth and Sixth Amendments resulting in a single amended claim of securities fraud arising from actions by Defendants, including the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ"). Plaintiff asserts claims that comply with the Court's requirements regarding sovereign immunity, prosecutorial immunity, and statutes of limitations, and reframes allegations in alignment with recognized legal standards.

Plaintiff will remove the claim of Hobbs Act Extortion and retain the explicit securities fraud claim in violation of Rule 10b-5 and 10b. Plaintiff adds the United States of America or as a defendant for money damages pursuant to the Federal Tort Claims Act (28 U.S.C. 1346). The amended complaint will also clarify several facts that may not have been clear to the Court as described in this Court's dismissal opinion (ECF #11).

II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. 1331 and 1343 for violations of federal law and constitutional rights. Venue is proper under 28 U.S.C. 1391 as the events giving rise to this action occurred in the District.

III. PARTIES

Plaintiff: Joseph Cammarata is currently a federal prisoner, who has argued his incarceration is a 3 year miscarriage of justice as a result of pervasive and systematic violations of constitutional rights and judicial ethics across three interrelated federal cases against him. There is a pending appeal in the Third Circuit for each of the federal proceedings against him.

Defendants: United States of America - Added as the employer of the Agencies and employees that have engaged in constitutional violations and misconduct, often without jurisdiction, to allow continued damage to Plaintiff

Securities and Exchange Commission - Agency responsible for prosecuting attorney engaging in misconduct and securities fraud

Department of Justice - Agency responsible for AUSAs engaging in misconduct and securities fraud

John V. Donnelly II: SEC attorney responsible for prosecuting Plaintiff's enforcement proceedings

David J. Ignall and Paul Shapiro: DOJ prosecutors responsible for Plaintiff's criminal trials

Jaqueline Romero: U.S. Attorney involved in oversight of Plaintiff's prosecution

Chad F. Kenney - U.S. District Court judge, who presided over the Plaintiff's criminal fraud trial and SEC civil enforcement action. Judge Kenney has been charged with bias, abuses of discretion, judicial misconduct, and acting in the absence of all jurisdiction.

IV. RELEVANT PROCEEDURAL HISTORY AND FACTS

On October 28th, 2021 through a grand jury indictment, Plaintiff was charged with wire fraud, based on "two essential facts required" that were thoroughly disproven at trial. See superseding indictment (21-cr-427-CFK paragraph #11).

On November 3rd, 2021 Plaintiff was arrested at Miami International Airport and was detained at FDC Miami on criminal charges of wire fraud for an alleged $16 million of ill-gotten gains. He was detained at FDC Miami until November 17th, 2021 during covid-19 and locked in a prison cell for 23.5 hours a day. On the same day (November 3rd, 2021), the SEC filed a civil complaint and ex-parte Temporary Restraining Order ("TRO") against Plaintiff for different charges of securities fraud. Both of

---

these concurrent criminal civil proceedings were assigned to the same district court judge, defendant Chad. F. Kenney.

On November 4th, 2021, the government Defendants opposed bail for Plaintiff at his first criminal bail hearing in Miami, so the next bail hearing was ordered for November 9th, 2021 at 9am in the same Miami courtroom.

The SEC's synchronous ex-parte TRO motion was over 900 pages, and failed to satisfy the required elements or made any mention of future irreparable damage. The TRO requested an asset freeze that never provided a valuation, tainted/untainted analysis, and also included substitute assets that cannot be subjected to a freeze prior to a judgment or conviction. Notwithstanding these failures the district court judge granted the ex-parte TRO on November 4th, 2021 (21-cv-4845-CFK, ECF #4). The TRO froze over $78 million of Plaintiff's property. This was all of the Plaintiff's assets and assured that he could not retain competent counsel or mount any constitutionally effective defense in any of the three tainted federal prosecutions against him.

The November 4th TRO order granting the asset freeze, ordered the Rule 65(b)(2) mandated show cause hearing, to also be held on November 9th, 2021 at 9am (see ECF #4). The court's order had the additional requirement that the parties meet and confer at least 24 hours prior to the hearing.

The SEC's purported notice of the show cause hearing, stated it was mailed to defendant on November 8th, 2021 via USPS standard mail. Before getting to the Due Process denial, the SEC violated the court's order of meeting and conferring at least 24 hours before the hearing. Plaintiff was incarcerated in FDC Miami, unaware of any court order or hearing and the SEC sent the required notice on November 8th, 2021, via USPS standard mail knowing full well the Plaintiff could not receive the notice of the hearing and certainly not meet the "at least 24 hours" requirement before the hearing.

The same day that the SEC admits to the "mailing" of the notice to Plaintiff on November 8th, 2021, they falsely claim to have served him via a USM-285 the same day. The SEC appears to have forged the USM-285 which claims that the Plaintiff was personally served the notice in the U.S. Marshal's cellblock on November 8th, 2021 at 10:50am. Despite the fact that any alleged notice would have still been untimely and in violation of the court's order, the Plaintiff was not in the U.S. Marshal's cellblock on November 8th, 2021. Plaintiff was in fact, in the U.S. Marshal's cellblock on November 9th, 2021 for his criminal bail hearing and signed a USM-285 at 10:50am. Notably, the date the USM-285 was personally served to Plaintiff, in the U.S. Marshal's cellblock at 10:50am, was on November 9th, not November 8th as falsely stated. The plaintiff was not permitted to have the package in the cell, so the U.S. Marshals held it until he went back to FDC Miami, but the Plaintiff never received the package, as it was lost in transit. Either way, there was never timely notice of the TRO hearing, and any claimed notice was proven to have been provided after the hearing had already occurred in Philadelphia at 9am on November 9th, 2021. Notwithstanding the unrefuted untimely notice of the hearing and failure to comply with the court's order, the simultaneous criminal and civil hearings in Miami and Philadelphia (on November 9th at 9am) with the same judge overseeing both of those cases, and without notice is a gross violation of due process and was never remedied.

On November 10th, 2021 the day after the unnoticed and simultaneous TRO hearing in Philadelphia the defendant judge Kenney, extended the terms of the already unlawful TRO, ECF #16. In that order the subject judge conceded that the Plaintiff did not participate and that he only found that good cause existed from the defendant's present, yet still extended the terms for Plaintiff without notice, due process, subject matter or personal jurisdiction, caused by a known simultaneous hearing.

It is worth noting that the Plaintiff has requested many hearings through various motions, TRO hearing requests, and petitions, repeatedly for the past three years and the subject judge has never once held the required Rule 65(b)(2) hearing to afford the Plaintiff due process. The asset freeze was never tailored to mitigate the damage, distinguish assets, ownership or jurisdiction, as required by law. The asset freeze impermissibly included assets not belonging to or under the control of Plaintiff. Lastly and quite relevant for Plaintiff instant claim is that the asset freeze included assets, not under Plaintiff's ownership, control, or signatory authority, that were held in a protected life insurance policy entirely outside the United States and well beyond the United States government's jurisdiction. The Defendants acted in the clear absence of all jurisdiction.

Again setting aside the improprieties of granting the ex-parte TRO, the forged and failed notices of the hearing, the unchallenged and continued lack of jurisdiction, and the November 10th, 2021 extension without any due process afforded to Petitioner, the TRO then legally expired on November 24th, 2021 at 11:59pm. Federal Rule Civil Procedure 65(b)(2) unambiguously states that any ex-parte TRO that is granted may not extend past 11:59pm on the 14th day without an additional show-cause hearing with the defendant's participation or consent, of which neither occurred.

Plaintiff has filed numerous motions over the past 3 years challenging:

-The grant of the ex-parte TRO.

-The undisputed and undeniable violation of due process.

-The simultaneous hearings which denied the subject judge of personal, tribunal, and subject matter jurisdiction of the TRO hearing and deprived Plaintiff of due process.

-----------------------------------------------------------------------------------------------------------

-The unchallenged fact that the ex-parte TRO indeed expired on November 24, 2021 at 11:59pm pursuant to Rule 65(b)(2)
-The documented denial to ever provide a TRO show cause hearing for the Plaintiff, provide judicial notice after multiple motions, and failure to rule on Plaintiff's ripe motions was clearly obstructing the record and right to appellate review.

While Plaintiff expects that the Third Circuit will finally invalidate the SEC civil asset freeze and dismiss the judgment for lack of subject matter jurisdiction, abuse of discretion, constitutional depravation of rights, and the perception of bias, these arguments have been on the record for three years, continue today, and must be preserved from being time-barred.

---

FROM: 02555506
TO:
SUBJECT: Part 2 - Amended Compliant
DATE: 02/12/2025 05:05:52 PM

V. WAIVERS OF SOVEREIGN IMMUNITY

Plaintiff's evidence of the pervasive denial of right to counsel under the Sixth Amendment, the denial of due process under the Fifth Amendment, and other demonstrated constitutional violations and misconduct are all largely unchallenged because they are irrefutable. Plaintiff re-raises these issues not as a claim for monetary damages, but as evidence to a clear waiver of sovereign immunity. Despite this Court's dismissal of the subject judge Chad F Kenney, Plaintiff would like to preserve that defendant on the basis that he did indeed act in the "clear absence of all jurisdiction", relative to this Complaint.

The individual Defendants, all acting under the color of law, deprived Plaintiff of due process, and knowingly engaged in numerous constitutional violations that was outside the scope of lawful actions in filing, pursuing and prosecuting Plaintiff. These acts are included material misrepresentations to the court and grand jury to unlawfully revoke Plaintiffs bail, illegally freeze his assets, and obtain fatally defective indictments and a baseless civil complaint. These acts outside the scope of their duties and under the color of law, have waived their sovereign immunity against civil liabilities. They may be officers of the Court, but much to their dismay and beliefs, are not above the law and constitutional rights of the Plaintiff. Their unchecked power of prosecution is also being reviewed by the new Presidential administration and attempts to have the DOJ finally held responsible for their actions and subversion of their oaths to justice by abusing their power of prosecution, with impunity.

In addition to the clear waiver of sovereign immunity from the individual defendants, the SEC and DOJ's actions as agencies of the United States, were also taken outside their statutory authority and without adherence to procedural safeguards and Plaintiff's deprivation of rights, fall outside the scope of sovereign immunity. Once again these agencies are under scrutiny for the precise conduct that Plaintiff has demonstrated to be true and it is time to hold them accountable, instead of protecting them from weaponizing the federal justice system, and destroying the lives of innocent citizens that are targeted by powerful interests, unlawful revenue collection, or like in prosecutions unscrupulous prosecutors abusing unchecked power to achieve headlines with which to propel themselves into promotions, elected office, or financial bonuses.

Even, absent the evidenced improper acts and clear waivers of sovereign immunity, the individual defendants and agencies are all under the responsibility of the United States of America, and the buck must stop there. Congress did not intend for corrupted federal actors abusing their power of prosecution to willingly violate constitutional rights and engage in prosecutorial misconduct, under the color of law, representing the United States, and not be held responsible, as they claim is "justice", for the people they prosecute and convict at a 98.4% conviction rate (higher than communist China).

The United States of America, must then stand up for their agencies and employees under the Federal Tort Claim Act, pursuant to 28 U.S.C. 1346, and have been added as a defendant. The Supreme Court and the statutes are clear that the FTCA grants jurisdiction to district courts, and waives sovereign immunity over "claims against the United States, for money damages...for injury of loss or property...caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. 1346(b)(1).

VI. AMENDED CLAIM FOR RELIEF

In response to this Court's opinion and comments, Plaintiff has removed several claims and perceived claims. The claim for Hobbs Act extortion has been withdrawn. Plaintiff's pro se compliant may have inferred other claims that were not explicit and Plaintiff withdraws claims that will be dependent on the invalidity of his criminal convictions and resulting sentences.

The sole independent claim for relief against the Defendants is the violation of federal securities laws under Rule 10b-5 and 10b of the Exchange Act. Plaintiff has also raised and continues to make claims for willful misconduct and multiple constitutional violations, including unrefuted denials of due process. These are considered dependent claims in which the Plaintiff has and will continue to demonstrate to this court and the trial jury, that the Defendants' actions were intentional to deny Plaintiff due process and procedural safeguards required by law to obtain an unlawful ex-parte TRO and asset freeze. The asset freeze granted on November 4th, 2021 froze over $78 million and included every penny of Plaintiff's assets.

The asset freeze was the "original sin" by the Defendant's in which allowed them to violate the Plaintiff's First, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendment rights and allowed to commit the independent claim of securities fraud.

A. Dependent Claim for Due Process

The Plaintiff asserts that his protected rights afforded by the Due Process Clause are not waived. The Supreme Court explains that "waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748, 90 S.

Ct. 1463, 25 L. Ed 2d (1970).

Even as a dependent claim, due process is not time barred, as it started in November of 2021 and Plaintiff is on the record requesting relief or even any Rule 65(b)(2) show cause hearing on the TRO for the Plaintiff, since June of 2022. Plaintiff was always denied both criminal Sixth Amendment and civil defense funds, due to the unlawful TRO freezing all his assets, and therefore was always representing himself in a pro se capacity while always incarcerated. Plaintiff had never had access to his legal work or dockets until he was moved to Monmouth County Correctional Institution in about August of 2023 when Plaintiff first obtained access to his dockets. At that time Plaintiff was first made aware of the simultaneous criminal bail hearing in Miami and the required TRO show cause hearing in Philadelphia, both on November 9th, 2021 at 9am. Plaintiff has since filed multiple motions for claims of due process and other constitutional violations, misconduct, and bias with in the subject district court, certainly before the two-year statue of limitations.

Additionally, equity tolling will still apply even for this dependent claim. The Third Circuit has identified three principal situations in which equitable tolling is appropriate under the Federal Torts Claim Act: "(1) the defendant as actively misled the plaintiff respecting the cause of action; (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has raised the precise statutory claim but has mistakenly done so in the wrong forum." Sch. Dist. Of Allentown v. Marshall, 657 F.2d 16, 20 (3d Cir. 1981).

The Plaintiff has demonstrated through petitions for a writ of mandamus and many motions for TRO relief that;

-The district court did not and still does not have subject matter jurisdiction.

-The SEC made material misrepresentations and failed to provide the required elements to lawfully obtain an ex-parte TRO.

-The district court improperly granted the ex-parte TRO without the required elements for an ex-parte TRO, and in contrary to Circuit and Supreme Court guidance, while never addressing any possible future irreparable harm.

-The SEC not only failed to timely notice Plaintiff of the November 9th, 2021 TRO hearing, but apparently falsified the date on the USM-285 from November 9th, 2021 to the previous day, November 8th, 2021.

-The district court who was assigned and oversaw both Plaintiff's criminal and civil proceedings scheduled and held the critical ex-parte TRO hearing on November 9th, 2021 in Philadelphia on the same day and time as Plaintiff's criminal bail hearing was occurring in Miami and Plaintiff never received notice.

-The district court, then acting without due process or personal jurisdiction over the Plaintiff, extended the ex-parte TRO without having good cause or consent of the Plaintiff. Indeed, the district court was aware of this fact by the stated language of the November 10th, 2021 order (ECF #16). The court conceded that Plaintiff was not present for the simultaneous hearing and stated, "Having reviewed the complaint and SEC's Motion for a Temporary Restraining Order and supporting documents (Dkt. Numbers 1-3), and having heard from those parties who appeared at the hearing, the court finds that good cause exists, and that those parties who appeared for the hearing consented, to extend the relief provided in the TRO order."

-That unambiguous admission affirmed that the Plaintiff was not noticed of the hearing and was not afforded the opportunity to object to the absurd terms of the TRO. This was a due process violation that shocks the conscience, and has still never been refuted, remedied, or even addressed, and was used to deny Plaintiff Fifth and Sixth Amendment rights to criminal defense counsel and fair criminal trials.

-The court, also in that admission, confirmed that the Plaintiff did not provide consent to extend the terms of the TRO.

-The district court was required to provide Plaintiff notice and due process in order to find good cause to extend the terms of the TRO. Even if we ignore the misconduct of simultaneous hearings, bias, and egregious violations of procedural safeguards, and the judge wanted to feign good cause, the terms of the TRO could only be extended until 11:59pm of the 14th day without another show cause hearing or consent. While the Defendant judge may have fancied the idea of claiming good cause without notice or due process to the Plaintiff, any perceived validity of that TRO extension evaporated on November 24th at 11:59pm. Rule 65(b)(3) mandates that ex-parte TRO extensions, can only extend for periods of 14 days. Even if there was a valid granting, due process, and good cause found by the court, he had to hold another show cause hearing or have consent by the Plaintiff to extend the TRO past the 14 day, November 24th, 11:59pm expiration and there was neither.

-Despite the legal impediments, statutory and procedural failures, denial of due process, and an unlawful extension, the TRO incontestably expired on November 24th, 2021 at 11:59pm.

In spite of all these facts on the record, the Defendants have never challenged or addressed the Plaintiff's many claims of the always invalid TRO. The Defendants have (1) misled the Plaintiff and the Circuit Court respecting the cause of action and (2) caused the Plaintiff, in some extraordinary way, been prevented from asserting his rights, such as due process, rights to criminal defense fees, and rights judicial notice, which have all been denied by the Defendant judge. These two situations alone afford the Plaintiff equitable tolling for the dependent due process claim to be preserved.

---

FROM: 02555506
TO:
SUBJECT: Part 3 - Amended Compliant
DATE: 02/12/2025 04:55:12 PM

B. Independent Claim of Securities Fraud

Foundation:
The Plaintiff has always argued the legality and validity of the TRO and asset freeze and how it repeatedly denied him right to Sixth Amendment criminal defense counsel, inter alia. The fact that the Plaintiff was charged with $16 million of alleged ill-gotten gains and the Defendants froze over $78 million, without any valuation or tainted analysis, demonstrates that there were at least $62 million of untainted assets. The Defendants also never challenged the Plaintiff's $78 million stated valuation, as the amount was transparent, yet a valuation was never completed by the government. Even if the Defendants argue a joint and several total amount of $40 million, there was still at least $38 million of untainted assets that Plaintiff was denied of his rights, again, and was an Eighth Amendment violation of an excessive potential fine. The Defendants cannot claim they were unaware as Plaintiff raised these issues in almost every SEC civil case motion and both of his criminal proceedings, this contributes the required scienter of the Defendants. Remarkably, the Defendants froze substitute assets of Plaintiff which is also impermissible ahead of any judgment or conviction.

Notably with the also uncontested millions of dollars of untainted assets, the Defendants only made one Sixth amendment criminal defense payment from Plaintiff's frozen funds. That single release to pay an attorney from Plaintiff's frozen assets, also took 10 months of SEC delays and was made less than 5 weeks before the complex criminal fraud trial with over 5.5 million pages of discovery. The Defendant judge Kenney denied every other motion for criminal and civil defense fees, despite at least 12 separate motions and hearing requests. Instead, the Defendant judge also engaged in structural error, when he through court orders, forced Plaintiff to represent himself in:

-Post-trial motions of his criminal fraud trial without any counsel.
-Make his own pro se arguments at his fraud trial sentencing hearing for the most critical arguments of the 22-point loss enhancement, restitution and forfeiture, all without a single identified "victim" or any actual loss.
-Plaintiff was denied any funds for his other related criminal tax trial, and had to represent himself for the complete proceeding, including trial, and post-trial phases, despite multiple Sixth amendment requests and millions of untainted dollars being available
-Plaintiff was also never afforded any release for civil counsel either.
-Plaintiff begged the Defendant judge to maintain his assets (which have suffered devaluation of approximately $50 million), and allow him simple living expenses, which was also denied and Plaintiff was not paid a single penny of living expenses in over 3 years after the Defendants froze over $78 million of his and never allowed him due process or a hearing to oppose it.

The Act of Securities Fraud:

In late December of 2022, the Plaintiff had been convicted in a patently unfair and tainted fraud trial. Then after being denied criminal defense fees for that case's post-trial motions and sentencing representation, the Plaintiff requested appellate attorney fees from the asset freeze. The Plaintiff had requested that Peter Goldberger represent him on his direct appeal and the Defendants engaged in their usual denials and obstruction of rights, until there was a hearing held on or about February 7th, 2023 in the Defendant judge's courtroom.

At that hearing the Plaintiff and Mr. Goldberger were present for the Plaintiff, the individual defendants, Paul Shapiro, David Ignall, and John Donnelly were present representing the United States on behalf of the DOJ and SEC, and the defendant judge presided over the hearing.

Mr. Goldberger affirmed to the court that he was requesting a $255,000 engagement fee to represent the Plaintiff on his direct appeal of his fraud conviction, as stated in his motion. It was at that time the DOJ and SEC immediately objected and incredibly stated that the Plaintiff was convicted and therefore "he has no rights to his assets", they said that his assets are now the government's assets. Mr. Goldberger responded and explained that a convicted person still has rights, and certainly Sixth Amendment rights when there are excessive untainted assets available.

The Defendants then told their co-defendant judge that they would agree to unfreeze the $255,000 Sixth Amendment fees to Mr. Goldberger, if the Plaintiff immediately repatriate his Bahamian private island to the United States. The Plaintiff remonstrated and told Mr. Goldberger that it was extortion and he denied their outlandish request. The Plaintiff told Mr. Goldberger that there was over $5 million of untainted assets in his frozen Merrill Lynch account that was liquid and immediately available.

The judge appeared taken aback that it was possible that there were indeed $5 million of accessible untainted assets of Merrill Lynch, and asked the DOJ and SEC (his co-defendants) if that was true.

The government confirmed that there was in fact the sufficient untainted assets available in Plaintiff's Merrill Lynch account.

---

They then told the court that while it was true, they had found a brokerage account at a Bahamian broker called Magellan Securities, containing $2.6 million of stock owned by the Plaintiff's life insurance policy. The government then suggested that the court ignore the available liquid untainted funds at Merrill Lynch and instead have the court force the liquidation of the full $2.6 million of stock from Plaintiff's foreign life insurance policy, then repatriate that full amount to the district court's registry account and only then they would agree to unfreeze $255,000 for Plaintiff's sixth Amendment right to appellate counsel. The Defendant judge Kenney, again shocked the conscience and jurisprudence, when he in fact ordered just that, over the objection of Plaintiff and contrary to many laws.

The assets, including stock held in Plaintiff's foreign life insurance policy are legally protected, as they are not for his benefit, or under his control or authority. Notwithstanding the already fatally flawed and expired TRO, the Defendant's also illegally included a life insurance policy protected under international laws that precluded these assets to be frozen.

Furthermore, after the TRO was already without due process and expired, the Defendants included assets that were not Plaintiff's assets (not in his name, benefit or control), protected by international life insurance laws and the life insurance was outside the jurisdiction of the U.S. Government anyway. The Defendants had no right to include those assets, and even if they believed the TRO was legal and valid, they certainly had no right or authority to force a Barbados life insurance company to liquidate stock in a Bahamian brokerage account, that does not belong to the Plaintiff. The amount of misconduct and acting in the absence of all jurisdiction is conclusive.

The Plaintiff filed motions attempting to stop the court from proceeding with what he told the court was Hobbs Act Extortion and actual securities fraud, before they liquidated the stock, but once again the Defendant judge ignored his pro se motions. The stock that they sold was Palantir, stock symbol ("PLTR"), held by the life insurance policy since about 2017 and was a long term hold.

Therefore, due to the Defendant's misconduct and reliance on an invalid and expired TRO, they unlawfully forced the sale of all $2.6 million of PLTR at approximately $7 per share on or about April 7th, 2023. The Defendants forced the sale of $2.6m shares of PLTR owned not by the Plaintiff but rather his protected international life insurance policy, and then repatriated all $2.6 million to the defendant judge's registry account, to provide Plaintiff with $255,000 for his criminal fraud appeal. While Plaintiff has removed the Hobbs Act Extortion claim, it is still important to note that these felonious acts by the Defendant were all under the color of law.

Actual Damages:

There is no legal or rational reason for the Defendant's actions against Plaintiff's life insurance policy and to force the sale of all of its approximate 346,667 shares of PLTR. Those shares when illegally sold in April of 2023 were approximately $7 a share and as of February 7th, 2025 PLTR stock is over $116 per share. Those same 346,667 shares that should still be held in Plaintiff's life insurance policy, would be worth over $40 million today.

The Defendants' act of securities fraud has caused approximately $38 million of damages through egregious and malicious misconduct, all under the color of law. The Plaintiff suggests the Defendants replace the 346,667 shares of PLTR stock back into the Magellan Brokerage account in the Bahamas, that is owned by the life insurance policy.

---

FROM: 02555506
TO:
SUBJECT: Part 4 - Amended Compliant
DATE: 02/12/2025 05:04:49 PM

VI. CLOSING SUMMARY

There is an extensive record and immutable documentation as to the facts stated in this amended complaint. The Plaintiff has provided clear waivers of sovereign immunity and has demonstrated that the Defendant judge, acted in the absence of all jurisdiction. Plaintiff demonstrated that there have been many statutory, procedural, and constitutional violations, including due process that continue today. The fact that the violations had not been discovered in 2021 and have been raised in motions and been intentionally suppressed provides equitable tolling for even the dependent claims.

The Plaintiff has complied with the Fed. R. Cave. P. 8 pleading requirements. The amended complaint contains sufficient factual matter, that is proven as true by the record and states a claim of securities fraud that is not merely plausible but incontrovertible. The Plaintiff's complaint has satisfied all of the required elements for a violation of federal securities laws under Rule 10b-5 and 10b of the Exchange Act. The amended complaint also complies with the heightened pleading standards of Fed. R. Civ. P. 9(b) for specificity in the Defendants' acts of securities fraud.

(i) The Defendants made many misrepresentations or omissions of material fact. Some of those material misrepresentations included untrue statements made to the Plaintiff's life insurance policy, trustees, and directors. Defendants purported to have had authority over accounts that were not owned by, for the benefit of, or controlled by the Plaintiff. The Defendants omitted the fact that the TRO had actually expired on November 24th 2021, as Plaintiff had proven in many unanswered motions and hearing requests. The Defendants also misrepresented that they had jurisdiction. The Defendants could not have tribunal and personal jurisdiction of the Plaintiff's life insurance policy, because they are not his assets, for his benefit, or under his control. Finally, the fact that they abused their power and influence, under the color of law to assert authority in the Barbados and the Bahamas, of which they had none, was another material misrepresentation that the foreign trustees and directors relied upon to force the sale of all 346,667 shares of PLTR from the Bahamian brokerage account at Magellan Securities.

(ii) The Defendants clearly acted with scienter, which is that they had a degree of knowledge that made them legally responsible for the consequences of their acts or omissions. The fact that Defendants knew and never challenged Plaintiff's motions, where he told them that their acts were Hobbs Act Extortion and securities fraud, put them on notice before they engaged. Plaintiff told them it was unlawful and a basis for civil punishment, further exhibits the required scienter.

(iii) The Defendants with no valid authority or jurisdiction acted on their own misconduct, and in the stated objection by the Plaintiff, to liquidate (sell) all of the PLTR shares in the legally unrelated life insurance policy. There can be no question that the Defendants' actions of unilaterally selling about 346,667 shares of PLTR in April 2023 was in connection to a securities transaction. There are well established guidance by the Supreme Court and the Third Circuit, that the act of causing the liquidation (initiating and ordering the sale), certainly "influenced", "coincided", and "was material to the decision to sell a security" meets the in connection requirement.

(iv) The Bahamian broker dealer, Magellan Securities, along with the life insurance policy's trustees and directors relied on the instructions and representations of the Defendants to engage in the full liquidation of the PLTR stock. There was an explicit dependence by the foreign broker, directors, and trustees to act on the trust of the Defendants' positions as judicial officers of the Court and the United States, invoking a misplaced authority.

(v) The Defendants undeniable acts have caused documented economic loss that, and is currently about $38 million is directly attributable to the price of Palantir stock (PLTR). Plaintiff had filed previous motions and, at the time of the original complaint, the economic loss was approximately $7 million, but has since increased to $38 million.

(vi) The cumulative acts of the Defendants have caused numerous constitutional violations and depravation of Plaintiff rights, to satisfy the dependent claim. The additional acts and elements described above, were the cause to effect the selling of all PLTR shares contained in Plaintiff's offshore life insurance policy. If the Defendants had not acted outside the scope of their collective authorities and abused their power under the color of law, the Plaintiff's Magellan Securities account of his life insurance policy would still contain all the shares of PLTR and be valued at over $40 million as of February 7th, 2025.

VII. REQUESTED RELIEF

The Plaintiff Requests:

(a) A declaratory judgment clarifying that the SEC, DOJ, and individual Defendants actions, taken outside their statutory and jurisdictive authority, were also without adherence to procedural safeguards, fall outside the scope of sovereign immunity.

---

(b) The Defendants to replace 346,667 shares of PLTR back into the same Magellan Securities brokerage account that they illegally liquidated them from.

(c) Injunctive relief prohibiting any further sales, liquidation, or transfers from Plaintiff's life insurance policy and assets not specifically listed in the asset freeze, while it is appealed.

(d) Appropriate sanctions against the individual Defendant attorneys, to begin holding corrupt officers of the court responsible for their acts of misconduct and weaponizing the U.S. justice system

Respectfully submitted,

Joseph Cammarata

February 12, 2025

Joseph Cammarata
02555-506
Fairton - Federal Correctional Institution - Camp
P.O. Box 420
Fairton, NJ 08320

FREEDOM FOREVER/USA FREEDOM FOREVER/USA FREEDOM FOREVER/USA FREEDOM FOREVER/USA

X-RAYED

RECEIVED
FEB 19 2025
AT 8:30 ______________M
CLERK, U.S. DISTRICT COURT - DNJ

U.S. District Court
Attn: Clerk of Court
402 East State St, Room 2020
Trenton, NJ 08608